# Exhibit 33

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between
  Michael & Renate DeMartini (Claimants)
  and
  Johns & Allyn, A Professional Corporation (Respondent)

Case Number: 74 194 485 13 S1M

## AWARD

I, THE UNDERSIGNED ARBITRATOR, having been duly designated and sworn, having conducted hearings on this matter attended by all parties and/or their representatives in accordance with the applicable Rules, and having fully reviewed, weighed and considered the testimony and documentary evidence submitted to me by the parties, including the testimony of expert witnesses, as well as the arguments of counsel and/or parties, hereby AWARD as follows:

### I.   Duty:

The attorney-client relationship between the parties has been clearly established. Respondent represented Claimants pursuant to the terms of the Attorney-Client Fee Agreement effective October 23, 2008 and two amendments to that agreement dated July 2, 2010 and April 1, 2011.

In connection with its representation of Claimants, Respondent had a duty to use such skill, prudence and diligence as members of its profession commonly possess and exercise.

For purposes of establishing the elements of a legal malpractice action in the subject situation, the existence of the duty has been established.

### II.   Breach of Duty:

#### A.  Preliminary Comments:

##### 1.  Re: CRPC:

As a preliminary matter, a brief comment on the California Rules of Professional Conduct: While the California Rules of Professional Conduct (CRPC) are intended to regulate the professional behavior of members, are not exclusive, are not meant to create new civil causes of action or legal duties for lawyers, and may sometimes result in ethics committee opinions that are not binding or in disciplinary actions that may not require the same elements of proof as required to prove the claims asserted herein, they are meant to protect the public and are binding on all members. Therefore, they certainly, at the very least, shed strong

1

light on the question of what members of the profession commonly possess and exercise in the area of skill, prudence and diligence, since members of the profession in California are required to abide by these rules. Claimants have cited many of the requirements of the CRPC as having been violated by Respondent and, while a rules violation alone might not establish that a duty has been breached in this case, consideration of evidence related to assertions of CRPC violations is appropriate here.

## 2. Re: Absence of Expert:

Also, a preliminary word about Respondent's assertion that Mrs. DeMartini's claims are unsupported by expert opinion: Respondent takes the position that Mrs. DeMartini's interests were the "same" as her husband's from "beginning to end." Having taken this position, Respondent is totally inconsistent when it suggests that Mrs. DeMartini should have called her own expert to essentially opine on all the "same" issues. Michael Sullivan's testimony, insofar as this Arbitrator may accept it, is sufficient expert testimony to support the claims of both spouses in this arbitration

## 3. Re: Expert Qualifications:

Finally, a preliminary word about the expert witnesses: I found both well qualified to opine as they did on the subject matter put before them.

## 4. Re: Standard Met:

### a.) Overall Representation and Representation Agreements:

I was not persuaded that Respondent's conduct with regard to the fee agreements was in any way improper, that Respondent sought or received any sort of windfall as a result of those agreements, that Respondent intended to exploit Claimants by entering into those agreements, that Respondent orchestrated the continuance of the trial for his own benefit, that Respondent's decisions regarding responses to discovery were improper or outside the bounds of properly applied attorney judgment, that Respondent deliberately returned client files in a disorganized manner or with missing documents, or that Respondent failed to cooperate with successor counsel. The evidence presented did not support a finding in Claimants' favor on any of those claims. In fact, based on the evidence, I have concluded that Respondent, largely in the person of Mr. Johns, an obviously well-skilled and experienced attorney, went into this attorney-client relationship intending to do a good job for his clients, agreed to accept flat fee revisions twice to try to get them through the process, which actually resulted in a loss of earned fees for Respondent, and, with the exception of the specifically noted failures to meet the required standard that occurred rather late in the process, did an excellent job of representing his clients.

### b.) Failure to Communicate with Mrs. DeMartini Separately: In addition to the claims that overlap with her husband's, Mrs. DeMartini asserts that Respondent separately failed to communicate with her, including Respondent's having failed to inform her about the valuation Stipulation. This is apparently true since

2

Respondent takes the position that, while many communications were directed to Mrs. DeMartini, Respondent largely assumed that communication with one spouse would effectively be communication with both spouses. Richard Stratton opined specifically to the effect that Respondent met the standard of care regarding communications with Mrs. DeMartini. Michael Sullivan also opined, although more broadly, on the duty to communicate but did not specifically contradict Mr. Stratton's opinion regarding the sufficiency of communications with a single spouse to accomplish that end. While I appreciate and even empathize with Mrs. DeMartini's frustration with the situation, I accept Mr. Stratton's opinion regarding the standard as correct. While the extra prudent thing for Respondent to have done was to either have both clients designate and authorize in writing a single contact person or to have communicated in every instance with both clients, there was no breach of the standard of care in failing to adopt either of those options or in communicating with one spouse only. Respondent met the standard of care in the community with regard to communications to married couple clients and an attorney is not required to act more prudently than members of his profession commonly do.

c.) The Stipulation Re Valuation: The evidence indicates that Mr. Johns' conduct in entering into the Stipulation regarding property values, while troubling at first glance, was not a separate breach of the standard of care. Rather, it appears to have been the result of a misunderstanding about client approval. The experts agreed that a stipulation as to value is beneficial in a partition action. Respondent appears to have understood that the Claimants agreed with the final iteration of the subject stipulation. The Stipulation itself does not provide a separate basis for a finding of legal malpractice although is part of the general lapse in effective communications discussed below.

## B.   Failures to Meet the Standard of Care:

1.   Deposition: Claimants assert that Respondent failed to meet the standard of care in connection with Mr. DeMartini's pre-trial deposition in the underlying case. Given the degree of complexity and the potential adverse consequences attached to having Mr. DeMartini testify as a percipient expert, I find that it was well below the standard of care for an attorney to have spent so little time in specific preparation for the subject deposition. The explanation given, that preparation had been going on throughout much of the course of representation, was not persuasive. Even very experienced deponents in far less complex situations require more specific preparation for the deposition experience than was afforded Mr. DeMartini, who was being asked to juggle competing complex concerns and follow difficult instructions under pressure. Mr. Johns did not, in my opinion, exercise the skill, prudence and diligence that members of his profession commonly possess and exercise in preparing a witness for deposition in most instances but certainly not where there are complexities of the kind involved in this situation and where the attorney recognizes, or should have recognized, that a particular witness may need a little more assistance in the particular instance.

3

2.    Failures with regard to Evidence at Trial: Claimants assert that it was below the standard of care not to present certain evidence at trial, including, but not limited to, testimony related to mineral rights. Michael Sullivan opined that Mr. Johns' conduct fell below the standard of care when he did not allow Mr. DeMartini to testify, or alternatively have a competent witness testify about many of the issues that Mr. DeMartini deemed to be important. While I will not presume to second guess most of the strategic decisions made by Mr. Johns, much of the problem in this instance was a direct result of his having mishandled the preparation for Mr. DeMartini's deposition because Mr. DeMartini was thereafter precluded from testifying as an expert at trial on certain issues. The deposition misstep was not the only source of the evidentiary problems at trial, however. Mr. Johns just didn't seem to be communicating effectively with his clients anymore by the time of trial, particularly when it came to listening to them and understanding their concerns about the evidence. Reliance on the attorney's right to make decisions about trial tactics, or on the judge's power to make decisions, in an attempt to brush away these failures to meet the standard of care simply is not persuasive here. The judge herself commented on the lack of evidence regarding the Empress Mine. It is clear to me from the evidence presented at the hearing on this matter that there was, at trial, and perhaps even now, a great deal of confusion over the term "nominal" as used by Mr. Cartwright to describe the value of the mineral rights. Mr. DeMartini wanted to provide testimony explaining that point but neither he nor any other expert did so. Mr. DeMartini clearly had an opinion as to what nominal meant in connection with the subject mineral rights and how that should be taken into consideration by the judge, and, if he wasn't able to give that explanation because of the deposition situation and the resulting motion in limine at trial, some other expert could have been called to do so. There was no persuasive evidence that Respondent heard his clients out on that subject, undertook reasonable research on the meaning of nominal value as used by Mr. Cartwright, or exercised attorney judgment here. I agree with Claimants that failure to introduce sufficient evidence on the issue of the value of the mineral rights cannot reasonably be construed as Mr. Johns' having chosen an "equally viable course of action." Mr. Stratton's testimony did not therefore convince me that this was a matter of attorney judgment on Respondent's part. In this instance, Respondent again fell below the standard of care. The evidence was not sufficient or clear enough for me to conclude that the same failure occurred with regard to most of the other trial-related issues raised by Claimants, such as the environmental concerns. However, the evidence does support the conclusion that there was also a failure to effectively communicate to the judge via expert or percipient testimony or other evidence or argument that Claimants did not wish to co-own just any property with Jim and Ruth and the reasons why they might be willing to do so with regard to certain properties but not others.

3.    Rushing the Review of the Proposed Alternative Plan: Claimants assert that Respondent failed in its duty to Claimants by denying them the ability during trial to make an informed decision on the other group's proposed property division plan. It really does not matter whether Claimants clearly told Mr. Johns that they needed some time and felt rushed. I simply heard no justification, or reasonable strategic advantage, for rushing through the process at that point or for failing to carefully review the plan and fully discuss it with the clients. It is also not relevant how much time on the stand Mr. DeMartini had to explain his position with

regard to the new plan. The point is that he couldn't be confident that he was aware of all the ways in which the alternative plan was not fair in his eyes because the Claimants did not have enough time to look it over, discuss it and ponder it, and only then testify about it. It also doesn't matter if Mr. Johns thought that the differences between the two plans were obvious or unimportant if his clients did not feel they were ready to go within the few minutes allotted to them. Again, I agree that this behavior fell below the standard of care. Mr. Stratton's testimony on this issue was not clearly to the point and therefore did nothing to change my mind on this issue. He basically stated that the hallway confrontation was not in the transcript, which I took to mean outside the realm of his opinion.

4.  Failure to Communicate Effectively: Somewhere along the line, Respondent stopped listening closely to his clients and failed to take the time to make sure that they understood him and he understood them. Mr. Stratton opined that there was no failure here and I agree that such was the case up to a point in time when Mr. Johns' communications skills, for some unknown and perhaps completely understandable reason, seriously eroded. He failed to properly instruct his client pre-deposition, and he appears to have misunderstood or ignored client concerns about many issues, including expert reports that Claimants thought required additional explanation, their attitude toward co-ownership of certain properties, and specific concerns regarding mineral rights and conditions specific to certain parcels. There was credible testimony that he lost his temper with them outside the trial courtroom, which in and of itself does not amount to a breach of duty, and simply wasn't willing to hear them out about the proposed alternative plan. This was not effective communication and fell well below the requirements of the CPRC and the standard of care.

No other assertions of malpractice were adequately supported by the evidence. However, for purposes of establishing the elements of a legal malpractice action in the subject situation, the existence of a breach of duty has been established.

## III.  Damages & Causation:

### A.  Damages:

If Claimants have not proved damages, there is no reason to consider the question of causation, the link between the breaches listed above and the damages.

Damages cannot be speculative; they must be established to a legal certainty. Respondent relies on case law discussing the requirement of proof of "appreciable harm as a legal certainty."

That Claimants were not awarded certain mineral rights was appreciable harm. Respondent itself designated Mr. DeMartini as a percipient expert in certain areas which would have reasonably included issues related to an explanation of the mineral rights situation, and the evidence in this arbitration, including Mr. DeMartini's testimony, strongly indicates that nominal did not mean zero to either Mr. Cartwright or Mr. DeMartini and that the mineral rights that Claimants did not receive have value. Moreover, with mineral rights under their properties

5

awarded to others, Claimants' properties exist under a threat of future problems in that regard.

That Claimants received properties they did not want, some in co-ownership they also did not want, was also certainly appreciable harm since one of the less desirable properties that Claimants received requires a road, additional easements, and a subdivision map to realize its value, according to Mr. DeMartini's testimony, which was entirely credible and well within his areas of experience, knowledge and expertise, and since co-ownership has clearly caused unresolved issues between Claimants and Jim and Ruth.

None of these damages are speculative. They are very real. That does not however necessarily mean that they are quantifiable or that all of the dollar amounts that Claimants have proposed related to these damages are sufficiently supported by the evidence.

Given his expertise, I accept Mr. DeMartini's assertions regarding the value attached to having to build an access road, to purchasing an easement related to the road, and to securing the required subdivision map ($120,000 in total). Although Claimants may never opt to do these things, their property has less value without these improvements. With regard to the mineral rights, it is certainly clear that the assumption of a zero value was incorrectly applied. Given the broad possible range of values, given the potential extremely highest value estimate even considering the costs to investigate and extract the minerals, and taking into consideration the fact that Claimants have been totally deprived of the right to even make a decision about whether to further investigate the value of the mineral rights and now have other people owning the mineral rights under their property, I find Mr. DeMartini's $158,000 valuation to be entirely reasonable. The specific amount of lost value attached to co-ownership of certain parcels has also not been adequately proven.

However, for purposes of establishing the elements of a legal malpractice action in the subject situation, the existence of actual damages in specific dollar amounts has been sufficiently proven.

## B. Causation:

Claimants wanted a partition in kind and they indeed received that result as Respondent accurately points out. It is also true that it was up to the Court to determine in equity which parcels each sibling would receive so, the sole fact that Claimants did not receive the parcels they wanted is not sufficient to support a finding in Claimants' favor here. However, neither Respondent's assertion that Claimants received parcels of "equivalent" value nor Respondent's express and implied conclusion that Claimants therefore are not entitled to a recovery in this Arbitration are supported by the evidence.

Stepping back and taking in the whole of the body of evidence, one sees a deteriorating attorney-client relationship, an attorney who indeed did an excellent

job during most of the course of that relationship but who, for reasons unknown, started to become impatient with his clients and to try to rush them to the finish line. As a result, he stopped communicating effectively with his clients and performed below the standard of care in several instances, although I genuinely believe that he never meant to do so and that, to this day, believes that he acted properly throughout. While I clearly understand the pressures of practice and client relation difficulties, the fact remains that there were clear breaches of duty.

The failure to properly prepare Mr. DeMartini for his deposition and to effectively communicate with him concerning whether and how to provide percipient expert opinion testimony or rather to defer to other experts' testimony, and the resulting defects and gaps in that deposition testimony, clearly limited Mr. DeMartini's ability to testify at trial on certain issues. Opposing counsel at trial moved *in limine* that Mr. DeMartini not be allowed to give expert testimony at trial. While Judge Adams did not completely rule out Mr. DeMartini's testimony at trial, she did effectively bar Mr. DeMartini from giving expert testimony in areas where at his deposition he had testified that he had no opinion. Thus, his trial testimony is disjointed and interrupted. The direct cause of this outcome was Respondent's failure to prepare the deponent and to effectively communicate instructions. Mr. DeMartini believed that he was following instructions not to give expert opinions at deposition and was placed in a difficult and confusing position while under oath. It is understandable that he did not handle those questions very well but Respondent's attempt to shift the blame for his deposition problems and any resulting trial problems to Mr. DeMartini is not persuasive.

The failure to present certain evidence related to the mineral rights at trial, including an explanation of Mr. Cartwright's report and the use of the term "nominal" resulted in the judge having insufficient evidence to consider on the mineral rights issue. The conclusion is supported by the judge's own statement. The Claimants are not required to prove causation with absolute certainty. They need only, as Claimant Michael DeMartini states in his brief, "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." Claimants also rely on the same case cited by Respondent for the proposition that Claimants needed to show that, "but for" the malpractice, it is more likely than not that Claimants would have received a better result. I find here that, but for the attorney malpractice with regard to both the deposition and the trial with regard to the mineral rights issue, and but for Respondent's failure to effectively communicate with his clients near the end of what was otherwise an exceptionally good legal representation, it is more likely than not that the Judge would have awarded a share of the mineral rights to Claimants, taking the expert's recommendation that the rights run with the land. Proximate cause between the breach and the injury is clearly established here.

The failure to communicate effectively with clients cannot be said to have directly lead to the Claimants receiving properties they did not want or co-ownership of certain properties. The evidence does not support the conclusion that but for that failure, it is more likely than not that the Judge would have taken factors like road access and the need for easements and maps into consideration when interpreting

the stipulation to values and dividing up the properties. Once the stipulation was in place, it is instead more likely than not that the Judge would have assumed that factors like the absence of roads or easements had already been factored in. Therefore, I was not given sufficient evidence to find a causal connection between the $120,000 loss in value and the malpractice related to failures to communicate.

The failure to allow Claimants more time to review the proposed plan lead to a Court decision without consideration of factors that Claimants might have otherwise objected to more persuasively at trial. However, once again, the evidence did not clearly establish that, but for this failure to meet the standard of care, it is more likely than not that the court would have ruled differently Proximate cause between the breach and the injury was not clearly established here.

All of the elements necessary to recover damages for legal malpractice have been proven to this Arbitrator's satisfaction: the existence of the duty, the breach of that duty by failing to conform to the standard of care, causation and actual damages. It is clear that, but for the fact that Respondent failed to handle the case in conformity with the standard of care, it is more likely than not that Claimants would have obtained a better result in the underlying action. Claimants are entitled to recover damages clearly caused by the breaches in question.

### IV.   Statute of Limitations Defense:

Respondent again submits that this action is barred by the applicable statute of limitations, suggesting this time that this Arbitrator "essentially" misstated the law when denying the previous motion for summary judgment. Respondent's closing brief misstates or misunderstands my earlier decision. It is true that in my Order Re: Summary Judgment I found that the "gravamen of all the claims set forth by Claimants in this matter is legal malpractice no matter what language was used to state or discuss those claims." (Closing Brief, page 1, ll. 20-22) That is a direct correct quote from my Order. However, the statements that add that the "arbitrator essentially stated that the DeMartinis knew the facts surrounding the malpractice claims over a year before the suit was brought" and denied the motion "because there was an issue of fact whether the DeMartinis knew that those facts constituted malpractice causes of action" (Closing Brief page 1, line 24 through page 2, line 2), are an inaccurate interpretation of my decision. I specifically stated "...I can only reasonably conclude from the papers submitted that the date that Claimants actually discovered the wrongdoing, or through reasonable diligence should have discovered it, was sometime after June 22, 2012, the date of the proposed tolling agreement." I later added, "...the papers submitted do not establish how long after June 22, 2012, discovery of the required facts occurred, or should have occurred through use of reasonable diligence." I speak often throughout that order of facts and use precisely the language that the court in *Peregrine* uses. I say quite clearly that I was not provided with sufficient evidence to make the determination. I did not deny the motion because I found an issue of fact as to whether the DeMartinis knew that those facts constituted certain causes of action, as Respondent asserts in its closing brief. The term I use is straight from the statute: " the facts constituting the wrongful acts or omissions." I state that it had not been established, nor could I reasonably infer, that

8

Claimants had already by June 22, 2012 discovered the facts that constituted any such wrongful act or omission.

Having gone over old ground inaccurately, and despite the volume of evidence in this case, Respondent then devotes a scant paragraph in the post-hearing briefing to its actual discussion of evidence elicited during this arbitration proceeding that might support the contention that the claims are barred by the applicable statute of limitations. I found the somewhat weak supporting argument no more persuasive the second time around. For one thing, the dates of the alleged, or even actual, breaches are not the deciding factors, yet that is what is primarily stressed in Respondent's post-hearing brief. Once again, Respondent has failed to convince me that the limitations period had expired by the time Claimants filed their claims. I have still not seen evidence that clearly establishes when Claimants knew or reasonably should have known the subject facts. An argument over provision of a disk or the form in which an attorney keeps his files (i.e., not on a disk), even the words "that's not good service" in the context of that conversation, hardly establishes knowledge of the required facts or a "malpractice" accusation.

## V.    Respondent's Objections to New Evidence:

On June 19, 2014, Respondent filed its Objections to New Evidence that Claimants submitted in support of their closing briefs. I sustain the objection with regard to Items 1, 4, 5 & 6. Overruled as to other objections. As to the documents listed under Item 2, I overrule the objections with regard to Tabs 1, 6, 7, 8, and 9. I sustain the objections with regard to Tabs 2, 3, 5, & 10.

### WHEREFORE,

Respondent shall pay to Claimants the sum of $158,000 plus interest thereon at the California statutory prejudgment interest rate from June 30, 2011 through the date of this Award.

The administrative fees of the American Arbitration Association, totaling $4850.00, and the compensation of the arbitrator, totaling $29,300.00 shall be borne by Respondent. Therefore, Respondents shall reimburse Claimant $19,100.00 for arbitration fees and costs.

Each party is to bear its own attorney's fees and costs incurred in this Arbitration.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted are hereby denied.

July 30, 2014

_____
Date

Carol J. Marshall

Carol J. Marshall